752 So.2d 458 (1999)
Mike FORT a/k/a Michael Fort a/k/a Michael Anthony Fort, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01291-COA.
Court of Appeals of Mississippi.
November 23, 1999.
*459 Eileen M. Maher, Natchez, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
KING, P.J., for the Court:
¶ 1. Michael Fort has appealed his conviction in the Circuit Court of Adams County, Mississippi of possession of a deadly weapon by a convicted felon. The circuit court sentenced Fort to serve a term of three years in the custody of the Mississippi Department of Corrections. Fort raises the following issues on appeal: 1) whether the trial court erred in allowing the district attorney to attack Benjamin Donald's credibility and 2) whether the State proved beyond a reasonable doubt that Fort willfully possessed a gun while a convicted felon.
¶ 2. Finding no error, this court affirms.
¶ 3. The Grand Jury of Adams County charged Fort with willful possession of a deadly weapon by a convicted felon. Prior to trial, Fort moved to exclude statements made by Donald to attorney Scott Pintard concerning Donald's cocaine possession and a pending cocaine charge against Fort. The court sustained Fort's motion, but ruled that the State could question Donald to show his bias, prejudice or interest.
¶ 4. At the trial, which began on April 1, 1998, the State's witnesses included Kevin Coleman, the policeman called to the scene; Roosevelt Owens, the investigating officer; and Alease White and Carolyn White Hannon, the eyewitnesses to the shooting. The testimony indicated that between 9:00 p.m. and 10:00 p.m. on May 21, 1997, Fort, Donald and two others decided to go to Wal-Mart to buy more food for a barbecue. Fort was driving his girlfriend's red Ford Escort with tinted windows. He drove down Madison and turned left onto Canal Street. As he drove down Canal Street, Fort pulled out a gun and fired six shots in front of White's home. White, who was entertaining family and friends on the front porch, immediately called the police and reported a drive-by shooting.
¶ 5. Officer Coleman responded to a 9-1-1 call received at 9:24 p.m. on May 21, 1997. He arrived to investigate the scene within three to four minutes after White's call. He explained that upon arrival, White's family and friends appeared to be frightened of something. Coleman interviewed White first and then Hannon. *460 During the interview, White informed Coleman of the drive-by shooting, and identified Fort as the shooter and the driver. She said there were three other people in the car, but could not identify them. White knew Fort because the car belonged to Fort's girlfriend, who lived near Canal Street. White had previously seen Fort driving the car. White saw fire come from Fort's extended hand. Because street-lights illuminated the area, White was able to see Fort's face through the windshield of the car.
¶ 6. Coleman investigated the area surrounding the house and the street and found no bullet holes or shell casings. Coleman testified that the absence of shell casings indicated that Fort may have used a revolver instead of an automatic weapon. Coleman testified that shell casings remain inside a revolver unless the shooter empties them. Coleman reported his findings from the scene and was replaced by detective Owens.
¶ 7. White testified that she was entertaining family and friends on the front porch of her home on Canal Street on May 21, 1997. They had been sitting on the porch since approximately 5:00 p.m. that evening. White testified that at approximately 9:30 p.m., she saw a red Ford Escort with tinted windows turn onto Canal Street. When the car reached her home, the driver extended his hand from the window and fired six shots from the gun. White called the police within minutes after the shooting.
¶ 8. Hannon's testimony was consistent with White's testimony. However, Hannon testified that she heard three or four shots fired from the gun. Hannon did not identify the shooter as Fort but indicated a recognition of the red Ford Escort. At trial, Hannon indicated that she saw the fire from the gun and was confident that Fort was the shooter. On cross, Hannon admitted that she did not identify Fort as the shooter in the police statement taken on May 22, 1997. On redirect, Hannon testified that she identified the driver as the shooter in her statement, and Fort was the driver.
¶ 9. Owens continued the investigation of Fort based on the initial report taken by Coleman. Owens initially charged Fort with committing a drive-by shooting. Owens later discovered that Fort had previously been convicted of burglary and larceny of a storehouse. This led to the modification of the initial charge to possession of a firearm by a convicted felon. An arrest warrant was issued for Fort as a result of this charge. Subsequently, Owens began his search for Fort. Owens found and arrested Fort on May 23, 1997. During the interview, Fort received the Miranda warnings and confessed to shooting the gun in the air while riding past White's home on May 21, 1997. The interview started at 4:17 p.m. and ended at 4:42 p.m. Fort appeared to understand the Miranda warnings and willingly waived his rights in the presence of detectives Dawson and Owens. Owens testified that Fort agreed to talk, admitted to the shooting on Canal Street, but would not write it down. Owens testified that he was the only detective present when Fort made this confession. Owens included Fort's confession in his case file on May 28, 1997. At the conclusion of Owens testimony, the State rested its case-in-chief. The defense's motion for a directed verdict was overruled.
¶ 10. The first witness to testify for the defense was Donald, a passenger in the car on the night of May 21, 1997. Donald testified that Fort picked him up in a red Ford Escort with tinted windows and took him to a party at the home of Fort's girlfriend. Donald said that between 9:00 p.m. and 10:00 p.m. he and Fort went to Wal-Mart to get more meat for the barbecue. On the way to the store, Fort picked up Hayes and his girlfriend. They traveled down Madison Street, turned right on Canal Street and went to the store. The windows were up, and they were all listening to music.
*461 ¶ 11. On cross, Donald acknowledged possessing and being charged with possession of cocaine. He also acknowledged a conversation with an attorney named Scott Pintard regarding Fort. The defense objected to this line of questions arguing that Donald's conversation with Pintard was privileged. The court overruled this objection but instructed the prosecution to proceed carefully. Donald admitted that he did not have an attorney-client relationship with Pintard. He also acknowledged a discussion of Fort with Pintard during a recorded conversation. Donald acknowledged having previously covered for Fort as well as presently covering for Fort by appearing as a witness.
¶ 12. Hayes and his girlfriend, who was unavailable as a witness, were passengers in the red Escort on the night of May 21, 1997. Hayes contends no shooting took place that night. Hayes testified Fort picked him up just as it was getting dark. Hayes admitted that he and Fort were good friends and lived together before his arrest. Hayes claimed to have been cruising around town with Fort that night on a "joy ride."
¶ 13. Fort, testifying in his own defense, said that he took Donald to the store to buy more meat for the party at approximately 8:30 p.m. After leaving the store, he picked up Hayes and his girlfriend. He proceeded down Maple Street to Madison and to Canal. Fort denied that he possessed or discharged a gun. Fort testified that he had a prior confrontation with Hannon while walking down Madison Street. Fort said that Hannon was driving her car past when, with the use of an expletive, she inquired at what was he looking? Fort claims to have done nothing to provoke her verbal attack. Fort denied having confessed to Owens and stated, "I told him I don't even know what he's talking about, because I did not do no drive-by shooting." On cross, Fort admitted talking to Owens on the May 23, but denied telling Owens that he shot the gun into the air.
¶ 14. The jury found Fort guilty of possession of a deadly weapon by a convicted felon. After reviewing Fort's extensive criminal history, the court sentenced Fort to serve a term of three years in the custody of the Mississippi Department of Corrections. After Fort's post-trial motions were denied, he perfected this appeal.

ANALYSIS AND DISCUSSION OF THE LAW

I.

Whether the trial court erred in allowing the district attorney to attack Benjamin Donald's credibility.
¶ 15. Fort, relying on Stewart v. State, 662 So.2d 552 (Miss.1995), contends that the court committed reversible error when it refused to grant his motion in limine to exclude the statements Donald made to attorney Pintard. In Stewart, which is distinguishable from the case at bar, the witness's testimony was irrelevant because it had nothing to do with the defendant's involvement in the conspiracy. Id. at 562. The testimony was based on the witness's dealings with an alleged co-conspirator. The defendant in Stewart was charged with capital murder and conspiracy to commit murder. The supreme court found the testimony given by an acquaintance of an alleged co-conspirator regarding an offer of money to kill the victim to be irrelevant and highly prejudicial against the defendant at trial. Id. Because the testimony failed to make it more or less probable that the defendant was involved in the murder under MRE 401 it was inadmissible. The State correctly argues that admission of Donald's testimony was not reversible error since it was probative on the issue of his truthfulness. The State asserts that Donald's testimony regarding his conversation with Pintard was relevant and admissible at trial. At trial, the prosecution sought to prove Donald's propensity for untruthfulness by proving his previous display of *462 bias or prejudice toward Fort in the interview with Pintard. In the instant case, Donald's testimony was based on his relationship with Fort and tended to establish his bias toward Fort. The trial court sustained Fort's motion in limine to the extent that the statements to Pintard be used to question the witness about his relationship and dealings with Fort by way of bias, prejudice or interest.
¶ 16. Additionally, Fort asserts that the prosecution's questioning on Donald's cocaine possession or sale charges was so pervasive that it seemed as if Donald were on trial instead of Fort. Fort alleges that Donald's credibility was irreparably damaged by this line of questioning. Fort made no objection to this line of questioning but objected to testimony relating to Donald's interview with Pintard based upon attorney-client privilege. Fort's initial motion in limine sought to exclude all statements from the interview. If Fort considered this testimony inadmissible, he was obligated to object. He did not. A matter not objected to at trial will not be addressed on appeal. "A trial judge will not be put in error on a matter which was not presented to him for his decision." Parker v. Mississippi Game and Fish Commission, 555 So.2d 725, 730 (Miss.1989) (citing Cossitt v. Federated Guar. Mut. Ins. Co., 541 So.2d 436, 446 (Miss.1989)). Having failed to object to testimony about the drug charges, Fort is barred from raising this issue on appeal.
¶ 17. While holding this matter to be procedurally barred, we note wide latitude is allowed in cross-examination when the chosen form of impeachment is by proof of bias, prejudice, or motive. Foster v. State, 508 So.2d 1111, 1115 (Miss.1987) (citing Parker v. State, 484 So.2d 1033, 1037 (Miss.1986)). The supreme court has stated that parties may liberally cross-examine proffered witnesses regarding bias and interest. Thompson Machinery Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997) (citing Hall v. Hilbun, 466 So.2d 856, 875 (Miss.1985)). See also Cook v. State, 728 So.2d 117 (¶ 4) (Miss.Ct.App. 1998) (stating that the right to question prosecution witnesses on motives, bias or prejudice is limited by relevancy). The trial court properly allowed the prosecution abundant latitude during cross-examination on the drug charges. The prosecution argues that the line of questioning on the drug charges was proper because it focused on the witness's propensity for truthfulness. The longtime relationship between Donald and Fort established Donald's prior acts of "covering" or of displaying bias or prejudice toward Fort. "The extent of cross examination lies within the sound discretion of the trial court, its ruling will be reversed when an abuse of discretion is shown." Sanders v. State, 352 So.2d 822, 824 (Miss.1977) (citation omitted). Based upon the record before this court, we find this assignment of error is without merit.

II.

Whether the State proved beyond a reasonable doubt that Fort willfully possessed a gun while he was a convicted felon.
¶ 18. Fort contends that the State failed to prove its case beyond a reasonable doubt in accordance with Miss. Code Ann. § 97-37-5(1) (Rev.1994) which reads as follows:
It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm... or any muffler or silencer for any firearm unless such person has received a pardon for such felony.
Both the prosecution and the defense agree that Fort was a convicted felon in 1994. Fort was convicted of burglary and larceny of a storehouse and was sentenced to a term of five years. Fort premises his burden of proof issue on two factors, (1) the credibility of the prosecution witnesses and (2) failure to provide the weapon. Credibility is a matter to be determined by *463 the finder of fact. McClain v. State, 625 So.2d 774, 781 (Miss.1993); Lewis v. State, 580 So.2d 1279, 1288 (Miss.1991); Benson v. State, 551 So.2d 188, 193 (Miss.1989); Dixon v. State, 519 So.2d 1226, 1228 (Miss. 1988); Temple v. State, 498 So.2d 379, 382 (Miss.1986). This Court does not, and cannot, substitute its opinion for that of the finder of fact, where the record contains substantial evidence which could support that finding. Id. While Fort offered contrary testimony, the State produced witnesses who identified Fort as the shooter or to whom he was alleged to have confessed. This created a classic credibility question which the jury resolved adversely to Fort. The jury chose to believe the State's witnesses. Considering that testimony, a jury could and did find that Fort possessed a weapon. Based upon the record before this Court, we cannot hold that to be error.
¶ 19. Finally, Fort argues that the decision of the lower court should be reversed because the evidence was legally insufficient to support a conviction. The supreme court has consistently held that the test for reviewing the legal sufficiency of the evidence is whether reasonable jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 808 (Miss. 1987) (citations omitted). "[W]ith respect to each element of the offense, [the Court must] consider all of the evidencenot just the evidence which supports the case for the prosecution in the light most favorable to the verdict." Id. "[The Court] may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty." Id. (citations omitted).
¶ 20. Alternatively, he argues that the decision of the lower court should be reversed as against the overwhelming weight of the evidence. When there is a question of overwhelming weight of the evidence, "this Court must accept as true the evidence which supports the verdict and will reverse only when ... the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."... Nelson v. State, 722 So.2d 656 (¶ 27) (Miss.1998). See also Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989).
¶ 21. Looking at all the evidence in the light most favorable to the verdict, reasonable and fair minded jurors could have found Fort guilty. There was eyewitness testimony from the prosecution and from Fort. Both sides placed Fort at Canal Street at the time the shooting occurred. The prosecution offered testimony that Fort was observed firing a gun. Two eyewitnesses saw Fort fire the gun into the air. Fort allegedly confessed to the detective that he shot the gun into the air. Fort and his two eyewitnesses testified that there was no gun and no shooting. After hearing both theories of what occurred, the jury chose to accept the State's version and to reject Fort's version. "The jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." McClain v. State, 625 So.2d 774, 781 (Miss.1993); Lewis v. State, 580 So.2d 1279, 1288 (Miss.1991); Benson v. State, 551 So.2d 188, 193 (Miss. 1989); Dixon v. State, 519 So.2d 1226, 1228 (Miss.1988); Temple v. State, 498 So.2d 379, 382 (Miss.1986). We are not convinced that the verdict was against the overwhelming weight of the evidence. Therefore, the circuit court's ruling is affirmed.

CONCLUSION
¶ 22. The prosecution's attack on Donald's credibility did not constitute reversible error. The State offered proof from which a jury could find beyond a reasonable doubt that Fort willfully possessed a weapon while a convicted felon. The judgment of the trial court is affirmed.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF *464 POSSESSION OF A DEADLY WEAPON BY A CONVICTED FELON AND SENTENCE TO SERVE THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ADAMS COUNTY IS TAXED WITH ALL COSTS OF THIS APPEAL.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.