964 So.2d 1181 (2007)
Jonathan M. WHITE a/k/a Jonathan Maurice White, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01213-COA.
Court of Appeals of Mississippi.
September 4, 2007.
*1182 Ross Parker Simons, Richard C. Conant, Pascagoula, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before MYERS, P.J., ISHEE and CARLTON, JJ.
MYERS, P.J., for the Court.
¶ 1. Jonathan Maurice White appeals his October 22, 2004, Jackson County Circuit Court conviction of capital murder. The jury found that White, while attempting to evade an arrest on suspicion of driving under the influence, struck the patrol car of Moss Point Police Officer Larry Lee, resulting in Lee's death. White was sentenced to a life term in the custody of the Mississippi Department of Corrections without the possibility of parole. Aggrieved by the judgment and sentence of the circuit court, White appeals, raising the following issues:

*1183 I. WHETHER THE CIRCUIT COURT ERRED IN ACCEPTING AS RACE-NEUTRAL THE REASONS OFFERED BY THE STATE FOR STRIKING JURORS NOS. 3, 9, 20, AND 29?
II. WHETHER JUROR NO. 30 WAS PROPERLY EXCUSED FOR CAUSE?
III. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING INTO EVIDENCE THE TESTIMONY OF THE STATE'S FORENSIC PATHOLOGIST, DR. PAUL MCGARRY, THAT PATROLMAN LEE WAS OUTSIDE OF HIS PATROL CAR WHEN STRUCK BY WHITE'S VEHICLE?
IV. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING INTO EVIDENCE STATE'S EXHIBITS NOS. 42, 43, 44, AND 45?
V. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING AN INSTRUCTION ON DEPRAVED HEART MURDER UNDER MISSISSIPPI CODE ANNOTATED SECTION 97-3-19(1)(b) WHEN THE INDICTMENT CHARGED WHITE WITH CAPITAL MURDER UNDER MISSISSIPPI CODE ANNOTATED SECTION 97-3-19(2)(a)?
VI. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT A CAPITAL MURDER CONVICTION?
¶ 2. Finding no error, we affirm White's capital murder conviction and life sentence.

STATEMENT OF THE FACTS
¶ 3. At approximately 10:30 p.m. on the night of October 17, 2002, Patrolman Carlton Logan of the Moss Point Police Department observed a car weaving from side to side and otherwise being driven erratically. When Logan attempted to stop the vehicle, the driver, Jonathan Maurice White, made a sudden U-turn and fled on the wrong side of Mississippi Highway 63. Patrolman Logan then radioed his fellow patrolmen for assistance in apprehending White. In response to Logan's radio transmission, Patrolman Larry Lee positioned his marked police patrol car with flashing blue lights on top of a high-rise bridge spanning Highway 63 to block White's path of escape. Patrolman Lee took a position outside his patrol car. As White approached the apex of the bridge, his vehicle reached a speed of nearly eighty miles per hour. Without slowing, White slammed his vehicle into Lee's person and his patrol car. The impact propelled Lee some distance across the pavement causing mass trauma, resulting in death.

DISCUSSION
I. WHETHER THE CIRCUIT COURT ERRED IN ACCEPTING AS RACE-NEUTRAL THE REASONS OFFERED BY THE STATE FOR STRIKING JURORS NOS. 3, 9, 20, AND 29?
¶ 4. White asserts that the circuit court violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when it accepted the reasons offered by the prosecutors for striking African-American Jurors No. 3, 9, 20, and 29 to be race-neutral. The State argues that each of the reasons offered by the State for striking these jurors has been previously recognized as an acceptable race-neutral reason in our State's jurisprudence, and therefore, White's Batson objections were properly overruled. We are to give great deference to the circuit court when reviewing whether or not peremptory *1184 challenges were race-neutral. Manning v. State, 765 So.2d 516, 519(¶ 8) (Miss. 2000). "Such deference is necessary because finding that a striking party engaged in discrimination is largely a factual finding. . . . Indeed, we will not overrule a trial court on a Batson ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence." Id.
¶ 5. Pursuant to the landmark case of Batson, a defendant may establish a prima facie case of purposeful racial discrimination in the State's use of peremptory challenges by showing: (1) that he is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race, and (3) that the facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities. See also Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987). In Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the United States Supreme Court clarified the proper trial court procedure following a Batson objection as follows: (1) the defendant must make a prima facie showing that the prosecutor has exercised his peremptory challenges on the basis of race, (2) if the requisite showing has been made, the burden shifts to the prosecution to articulate race-neutral explanations for striking the jurors in question, and (3) the trial court has the duty of determining whether the defendant has carried his burden of proving purposeful discrimination. The process outlined in Hernandez has been adopted in Mississippi. See Walters v. State, 720 So.2d 856, 865(¶ 28) (Miss.1998); Thorson v. State, 721 So.2d 590, 593(¶ 2) (Miss.1998).
¶ 6. In the case at bar, the prosecution used ten of its twelve peremptory strikes to eliminate African-Americans from the venire. White raised Batson objections to the striking of Juror Nos. 3, 9, 20, and 29, and the circuit court then required the prosecutor to provide race-neutral reasons for striking each of these jurors. In response, the prosecutors articulated that Jurors No. 3 and 9 were struck because law enforcement officers present in the court room indicated to the prosecutors that Juror No. 3 had "a family full of drug dealers" and that Juror No. 9 "lived in a high crime area." Additionally, the prosecutors articulated that Juror No. 3 was struck because she had previously served as a juror on a criminal case that failed to return a death sentence, where the prosecution sought the death penalty. The prosecution further proffered the reason that Juror No. 20 was struck because he was a counselor at a mental health facility and Juror No. 29 was struck because of her demeanor. The prosecution asserted that Juror No. 29 was non-responsive and slept through much of voir dire.
¶ 7. Our case law has set out a non-exhaustive list of valid race-neutral reasons for the exercise of peremptory challenges, which includes "living in a `high crime' area, body language, demeanor, [distrust of a juror by the party exercising the strike], inconsistency between oral responses and the juror's card, criminal history of juror or relative, social work and other types of employment, and religious beliefs." Perry v. State, 949 So.2d at 767-68(¶ 7) (Miss.Ct.App.2006) (quoting Walker v. State, 815 So.2d 1209, 1215(¶ 12) (Miss. 2002)). Additionally, our supreme court has previously recognized prior service on a criminal jury that returned a verdict other than the outcome sought by the State as a valid race-neutral reason for striking a juror. Harper v. State, 635 So.2d 864, 868 (Miss.1994). Thus, we hold that the circuit court did not err in accepting as race-neutral the prosecution's reasons for striking Jurors No. 3, 9, 20, and 29.
*1185 II. WHETHER JUROR NO. 30 WAS PROPERLY EXCUSED FOR CAUSE?
¶ 8. White next asserts that under the United States Supreme Court's holding in Witherspoon v. Illinois, 391 U.S. 510, 519-20, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the circuit court erred in excusing Juror No. 30 for cause at the request of the State. White argues that the prosecutor's delay in announcing that he would not seek the death penalty until after jury selection resulted in Juror No. 30 being improperly excluded for cause on the basis that he opposed the death penalty. The State asserts that the defense made no objection during voir dire to the striking of Juror No. 30 for cause, and, in fact, the defense agreed to the strike. Further, the State asserts that it was not error for the circuit court to excuse for cause a member of the venire who stated that he could not follow the law as enunciated.
¶ 9. Questions of prosecutorial misconduct will not be addressed where the defendant did not raise the question at trial. Jackson v. State, 832 So.2d 579, 581(¶ 3) (Miss.Ct.App.2002) (citing Dufour v. State, 483 So.2d 307, 311(Miss.1985)). Failure to object at trial acts as a procedural bar in an appeal. Jackson, 832 So.2d at 581(¶ 3) (citing Carr v. State, 655 So.2d 824, 853 (Miss.1995)). This issue is procedurally barred.
III. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING INTO EVIDENCE THE TESTIMONY OF THE STATE'S FORENSIC PATHOLOGIST, DR. PAUL MCGARRY, THAT PATROLMAN LEE WAS OUTSIDE OF HIS PATROL CAR WHEN STRUCK BY WHITE'S VEHICLE?
¶ 10. White asserts that the circuit court erred in permitting the State's forensic pathologist, Dr. Paul McGarry, to testify that Lee was standing outside of his patrol car when struck by White's vehicle. At trial, White argued that the testimony was outside the scope of Dr. McGarry's expertise, that the information was not provided in discovery, and that the testimony was only meant to bolster the prosecution's theory that White recognized a uniformed officer prior to impact. On appeal, White argues that Dr. McGarry was not tendered as an expert in accident reconstruction, and such testimony is outside his area of expertise. Further, White argues that Dr. McGarry's opinion that Lee was outside of his patrol car when struck was not provided to the defense during discovery. The State contends that Dr. McGarry was qualified and accepted by the circuit court as an expert in forensic pathology, which encompasses expertise in wounds. Therefore, the State asserts that under Mississippi Rule of Evidence 702, Dr. McGarry was allowed to testify, based on the autopsy he performed and his autopsy notes, as to the position of Lee's body at the time his wounds were received. Additionally, the State asserts that Dr. McGarry's autopsy reports were provided to the defense prior to trial and his opinions were expressed therein. "[T]he admission of expert testimony is within the sound discretion of the trial judge." Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 34(¶ 4) (Miss.2003). Therefore, the decision of a trial judge will stand "unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion." Id.
¶ 11. Our supreme court has previously addressed this issue in Bell v. State, 725 So.2d 836, 853-54 (¶¶ 50-51) (Miss.1998), where the court held:
In addition, Dr. Hayne was qualified as an expert in forensic pathology, which *1186 includes expertise in how wounds are received. This expertise necessarily relates to the position of the body at the time. The State contends that this is allowable under Miss. R. Evid. 702, Testimony by Experts.
Although there have been cases cited where experts were not permitted to testify to the position of the body, these are not consistent with the rules of evidence and the substance of the complained of testimony. Miss. R. Evid. 702 states: "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Bell stipulated as to the fact that Dr. Hayne was an expert in forensic pathology. Forensic pathology is generally accepted as a division within pathology requiring a medical degree and advanced training in forensic pathology. A forensic pathologist addresses two basic questions: what was the cause of death, and what was the manner of death? Rule 702 allows Dr. Hayne to opine as to the path of the lethal gunshot wound and that path is through the third finger on the right hand into the left temple. This view has broad acceptance in jurisdictions applying Rule 702. See Eason v. United States, 687 A.2d 922 (D.C.1996); State v. Thomasson, 122 Idaho 172, 832 P.2d 743 (Idaho 1992); State v. Sparks, 297 N.C. 314, 255 S.E.2d 373 (N.C.1979). This assignment of error has no merit.
Following the logic employed by our supreme court in Bell, we find Dr. McGarry's testimony that Patrolman Lee's wounds indicated that he was struck while standing outside his vehicle, rather than sitting inside, is admissible under Rule 702. Furthermore, the opinion is consistent with the autopsy report provided to the defense prior to trial and the circuit court did not abuse its discretion by allowing Dr. McGarry to opine as to the location of Patrolman Lee's body at the moment of impact.
IV. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING INTO EVIDENCE STATE'S EXHIBITS NOS. 42, 43, 44, AND 45?
¶ 12. White argues that the circuit court erred in admitting into evidence, over his objection, State's Exhibits No. 42, 43, 44, and 45, all which depicted Patrolman Lee's mangled body. He asserts that the gruesome and repetitive content of the photographs served only to inflame the jury and that the probative value of the photographs was greatly outweighed by their prejudice. The State contends that the photographs were admitted during the testimony of Dr. McGarry to aid the doctor in describing the circumstances of Patrolman Lee's death. The State asserts that Mississippi's appellate courts have expressed that the admission of photographs, no matter how gruesome, for this purpose is within a trial judge's sound discretion.
¶ 13. Our standard of review for either the admission or exclusion of evidence is abuse of discretion. Harrison v. McMillan, 828 So.2d 756, 765(¶ 27) (Miss.2002). Even if this Court finds an erroneous admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party. Gibson v. Wright, 870 So.2d 1250, 1258(¶ 28) (Miss.Ct.App.2004). Specifically, the admissibility of gruesome crime scene photographs is within the sound discretion of the trial court. Randolph v. State, 852 So.2d 547, 566(¶ 62) (Miss.2002) (citing Chatman v. State, 761 So.2d 851, 854(¶ 11) (Miss.2000)). The decision to admit gruesome photographs "runs toward *1187 almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." Id. (citing Spann v. State, 771 So.2d 883, 895(¶ 29) (Miss.2000)). Photographs are deemed to have evidentiary value if admitted to (1) aid in describing the circumstances of the killing, (2) aid in describing the location of the body and cause of death, and (3) supplement or clarify witness testimony. Id. The photographs in question were used by Dr. McGarry to describe the circumstances of Patrolman Lee's death, the cause of death, and location of Lee's body. The photographs were relevant and clarified the matter for the jury. Therefore, the admission of the photographs was not error, and this issue is without merit.
V. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING AN INSTRUCTION ON DEPRAVED HEART MURDER UNDER MISSISSIPPI CODE ANNOTATED SECTION 97-3-19(1)(b) WHEN THE INDICTMENT CHARGED WHITE WITH CAPITAL MURDER UNDER MISSISSIPPI CODE ANNOTATED SECTION 97-3-19(2)(a)?
¶ 14. White was indicted under Mississippi Code Annotated section 97-3-19(1)(a) for capital murder, but a jury instruction was presented by the state on depraved heart murder under Mississippi Code Annotated section 97-3-19(1)(b). White argues that the circuit court erred in allowing a jury instruction on depraved heart murder to be read to the jury, when he was charged with capital murder. "This familiar issue has long been resolved in our state's jurisprudence." Chatman, 952 So.2d at 948(¶ 6). "Although the structure of Section 97-3-19(1)(a) and (b) appears to create two distinct categories of murder, Mississippi case law has established that deliberate design murder and depraved heart murder have coalesced into one." Id. (citing Catchings v. State, 684 So.2d 591, 599 (Miss.1996)). "Although the statutory language defining depraved heart murder does not clearly state the requirement for deliberate design or malice aforethought, depraved heart murder involves an act so reckless that malice or deliberate design is implied." Chatman, 952 So.2d at 948(¶ 6) (citing Windham v. State, 602 So.2d 798, 801 (Miss.1992)). Therefore, we find no error by the court's allowing the depraved heart murder instruction.
VI. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT A CAPITAL MURDER CONVICTION?
¶ 15. Lastly, White argues that the circuit court erred in denying his motion for JNOV and asserts that the evidence presented at trial was insufficient to support his capital murder conviction because the prosecution failed to prove the required element of Mississippi Code Annotated section 97-3-19(2)(a) that White acted "with knowledge that the victim was a peace officer." Issues based upon a denial of a motion for JNOV challenge the sufficiency of the evidence. Boose v. State, 851 So.2d 391, 394(¶ 13) (Miss.Ct.App. 2003). The standard of review of a claim that the evidence presented at trial was insufficient to support the verdict requires the reviewing court to accept as true all evidence tending to support the verdict, including the inferences derived therefrom, and ask the question, "after viewing the evidence in the light most favorable to the prosecution, [if] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 *1188 L.Ed.2d 560 (1979)). This Court may only reverse the denial of the directed verdict or JNOV "where with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty." Boose, 851 So.2d at 394(¶ 14) (quoting Harveston v. State, 493 So.2d 365, 370 (Miss.1986)). The evidence adduced at trial established that White struck Lee, a uniformed police officer, with his automobile while Lee was standing outside his marked police car with flashing blue lights. The argument that White was unaware that Lee was a police officer is unsupported by the record. Accordingly, we find that the evidence presented at trial, when viewed in the light most favorable to the prosecution, and allowing the jury to make all reasonable inferences therefrom, would allow a rational juror to conclude that White knew Lee was a police officer at the moment of impact. This issue is without merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF CAPITAL MURDER BY DEPRAVED HEART AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
LEE, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY. IRVING, J., NOT PARTICIPATING.