CARLTON, J.,
 

 for the Court.
 

 ¶ 1. On February 10, 2005, Renaldo D. Butler was indicted by a grand jury of the First Judicial District of Hinds County, Mississippi for possession of cocaine pursuant to Mississippi Code Annotated section 41-29-139 (Rev.2005). On February 6, 2007, Butler was found guilty by a jury of possession of cocaine. Butler was sentenced to eight years imprisonment, six years to serve, two years suspended, and two years of post-release supervision in the custody of the Mississippi Department of Corrections (MDOC). Butler was also ordered to pay a $2,000 fíne. After timely filing post-trial motions, all of which were denied, Butler appealed his conviction. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On the evening of October 25, 2003, Butler was at the Chuk Stop Gas Station and Car Wash (Chuk Stop) with about nineteen other people for the purpose of having a repast in memory of one of Butler’s former co-workers. Butler worked at the Chuk Stop washing cars. While Officer Casanova Reed was patrolling the area near the Chuk Stop, he noticed a crowd at the Chuk Stop drinking alcohol in violation of a city ordinance. Officer Reed approached the Chuk Stop with the purpose of dispersing the crowd. Officer Reed testified that upon his approach, he saw Butler reach into his pocket and drop something.
 

 ¶ 3. Officer Reed testified that he told Butler to stop, and Butler complied. Officer Reed then picked up the bag by Butler’s feet, believed the bag contained crack cocaine, and arrested Butler. The contents of the plastic bag later tested positive for crack cocaine. On February 10, 2005, Butler was indicted by a grand jury for possession of cocaine.
 

 ¶ 4. At trial, Sheryl Chandler, who was at the Chuk Stop when Butler got arrested, testified on behalf of Butler that she did not see Butler throw anything on the ground. However, Chandler testified on cross-examination that because it was dark and because she was not in a position to see Butler throw anything down, she, in fact, could not have seen whether Butler had thrown anything down or not. Additionally, on cross-examination, the assistant district attorney elicited testimony from Chandler indicating that Chandler knew him as the prosecutor who had tried one of Chandler’s sons on a murder charge.
 

 ¶ 5. Butler testified at trial that the drugs recovered on the night of his arrest were not his. On February 6, 2007, the jury found Butler guilty of possession of cocaine. Butler now timely appeals raising four issues:
 

 I. Whether the trial court correctly instructed the jury when it gave the State’s requested jury instruction on constructive possession and denied Butler’s requested instruction on actual possession.
 

 II. Whether the trial court erred when it overruled a
 
 Batson
 
 challenge by Butler.
 

 III. Whether the trial court erred when it permitted Chandler to be questioned regarding her sons’ criminal histories.
 

 IV. Whether the trial court erred in denying Butler’s motion to suppress the cocaine Officer Reed retrieved at the scene of Butler’s arrest.
 

 
 *114
 
 DISCUSSION
 

 I. Jury Instructions
 

 ¶ 6. Butler contends the trial court erred in denying his requested instruction as to actual possession and in granting the State’s requested instructions as to constructive possession. However, actual possession is not required; constructive possession is sufficient.
 
 Smith v. State,
 
 839 So.2d 489, 497(22) (Miss.2003). In looking at the jury instructions as a whole, we find that the court properly instructed the jury as to the law regarding possession and that the court did not err in denying Butler’s proposed jury instruction as to actual possession.
 

 ¶ 7. “A defendant is entitled to have jury instructions given which present his theory of the case ... the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.”
 
 Dear v. State,
 
 966 So.2d 218, 219-20(5) (Miss.Ct.App.2007) (citation omitted). Upon appellate review, “jury instructions should be read together as a whole when determining whether the court erred in granting or denying the jury instruction in question.”
 
 Id.
 
 at 220(5) (citation omitted).
 

 ¶ 8. Butler’s requested jury instruction on actual possession reads as follows:
 

 Jury Instruction D-4: The [cjourt instructs the jury that actual possession means to have actual physical control, care, and management of the drug. The court also instructs the jury that a person is in possession of an illegal substance if he was aware of the presence and character of the particular drug and was intentionally and consciously in possession of it.
 

 ¶ 9. The State’s requested, and given, jury instructions on constructive possession read as follows:
 

 Jury Instruction S-3: The court instructs the jury that if you believe from all of the evidence on this case, beyond a reasonable doubt, that Renaldo Butler at [the] time and place in question was aware of the presence and character of the substance which he is charged with possessing and that he was in close proximity to the substance in question and that the substance was subject to his dominion and control, and that he acted in such a way as to exercise such dominion and control, then you must find him guilty of possession of [c]ocaine.
 

 Jury Instruction S-4: The [c]ourt instructs the [j]ury that to constitute “Possession” as applied to this case, it is not necessary that the State prove actual possession; it is sufficient if the State establishes that the substance involved was subject to the defendant’s dominion and control, and that he was aware or reasonably should have been aware, of its presence and character.
 

 ¶ 10. Butler cites
 
 Hicks v. State,
 
 580 So.2d 1302, 1306 (Miss.1991) in support of his argument that his case lacked an evi-dentiary basis for a constructive possession jury instruction. In
 
 Hicks,
 
 law enforcement saw the defendant cross a street, toss a film canister into a ditch, and then walk back across the street.
 
 Id.
 
 at 1303. The film canister was thrown outside of the defendant’s span of dominion and control as it was located in a ditch across the street from where the defendant was arrested.
 
 See id.
 
 The film canister was retrieved by law enforcement, and the defendant was arrested for possession of cocaine.
 
 Id.
 

 ¶ 11. At trial, Hicks requested a constructive possession jury instruction.
 
 Id.
 
 at 1306. Hicks contended that in order to find him guilty of possessing cocaine, the State had to prove that he had dominion
 
 *115
 
 and control over the cocaine sufficient to support a possessory interest.
 
 Id.
 
 The court refused Hicks’s constructive possession jury instruction finding that the instruction was not supported by the evidence.
 
 Id.
 
 In affirming Hicks’s conviction for possession of cocaine, the supreme court found that “there [was] clear evidence establishing actual possession by Hicks from the testimony of the detective, who actually saw Hicks with the canister of
 
 cocaine....” Id. As
 
 explained below, the facts of Butler’s case differ from
 
 Hicks,
 
 and jury instructions must be supported by the evidence.
 

 ¶ 12. It is well stated that “[possession of a controlled substance may be actual or constructive.”
 
 Dixon v. State,
 
 953 So.2d 1108, 1112(9) (Miss.2007). A defendant may not change what the law constitutes as possession.
 
 See id.
 
 In the case at bar, Butler “is in essence asking that the court not instruct the jury about the law.”
 
 See Smith,
 
 839 So.2d at 497(22).
 

 ¶ 13. In
 
 Smith,
 
 cocaine was found in Smith’s vehicle and he was charged, and later tried, for possession of cocaine.
 
 Id.
 
 at 493(1-3). At trial, the jury was given a constructive possession jury instruction.
 
 Id.
 
 at 497(22). Smith argued, however, that a constructive possession was improper “because, if anything, [the passenger’s] testimony would lead the jury to believe Smith was in actual possession of the cocaine.”
 
 Id.
 
 (citing
 
 Hicks,
 
 580 So.2d at 1306). The court explained that: “[i]n order to find [a][d]efendant guilty of possession of cocaine ... there must be sufficient facts to warrant a finding by the jury that the [defendant was aware of the presence and character of the substance and was intentionally or consciously in possession of the substance.”
 
 Id.
 
 at (20). In affirming Smith’s conviction, the court concluded:
 

 Smith is in essence asking that the court not instruct the jury about the law. The law states that actual possession is not needed, that constructive possession will do. A jury’s job is to weigh the evidence presented to it. If the facts warrant it, the jury has the right to reach the conclusion that Smith was in actual possession. Smith has no legitimate complaint that a jury instruction not be given simply because the jury might come to a conclusion that is unfavorable to Mm.
 

 Id.
 
 at (22).
 

 ¶ 14. Similarly, in
 
 Curry v. State,
 
 249 So.2d 414, 416 (Miss.1971) (emphasis added), the supreme court explained the concept of possession in the following manner:
 

 [T]he concept of “possession” is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.
 
 It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control.
 

 ¶ 15. As stated in
 
 Curry
 
 and
 
 Smith,
 
 in order to convict Butler, the jury must have been presented with sufficient facts from which it could conclude that Butler “was aware of the presence and character of the substance and was intentionally or consciously in possession” of the crack cocaine found at his feet.
 
 See id.; see also Smith,
 
 839 So.2d at 497(20). At trial, Officer Reed testified that he saw Butler drop a bag at his feet. The recovered bag was confirmed through later testing to have contained crack cocaine. The above evidence, including Butler’s denial of possession, was all before the jury. Ultimately, the jury believed that Butler, in fact, pos
 
 *116
 
 sessed crack cocaine on the night of his arrest.
 
 See McAdory v. State,
 
 772 So.2d 1107, 1111(10) (Miss.Ct.App.2000) (stating that issues dealing with credibility are left to the jury to decide). Therefore, from the record before us and under the holdings of
 
 Curry
 
 and
 
 Smith,
 
 we cannot find that the denial of Butler’s requested instruction amounted to error.
 
 See Dear,
 
 966 So.2d at 220(5). Again, “actual possession is not needed ... constructive possession will do.”
 
 Smith,
 
 839 So.2d at 497(22). This issue is without merit.
 

 II. Butler’s
 
 Batson
 
 Challenge
 

 ¶ 16. Butler contends that the trial court violated
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in ruling that a prima facie case of discrimination had not been established when the State used four of six peremptory strikes to strike African American jurors from the venire. The State admits exercising four strikes against African Americans, but two of these four prospective jurors had already been challenged for cause. Additionally, the State had also accepted “several” African Americans on the jury. We find that Butler failed to make a prima facie case of a
 
 Batson
 
 violation; therefore, we find that the trial court’s ruling denying Butler’s
 
 Batson
 
 challenge was neither clearly erroneous nor against the overwhelming weight of the evidence.
 

 ¶ 17. The Court gives great deference to the trial court when determining whether or not peremptory challenges were race-neutral.
 
 White v. State,
 
 964 So.2d 1181, 1183-84(4) (Miss.Ct.App.2007) (citation omitted). “Such deference is necessary because finding that a striking party engaged in discrimination is largely a factual finding....”
 
 Id.
 
 at 1184(4) (citation omitted). “[W]e will not overrule a trial court on a
 
 Batson
 
 ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence.”
 
 Id.
 
 (citation omitted).
 

 ¶ 18. Pursuant to
 
 Batson,
 
 a prima facie case of purposeful discrimination is established by the objecting party by showing that: (1) the defendant is a member of a cognizable racial group; (2) the opposing party used peremptory challenges to strike members of the objecting party’s racial group from the venire; and (3) the facts and circumstances surrounding the use of the peremptory challenge raise an inference of discriminatory purpose on the part of the party making the challenge to strike minorities.
 
 Dennis v. State,
 
 555 So.2d 679, 681 (Miss.1989) (citing
 
 Batson,
 
 476 U.S. at 96, 106 S.Ct. 1712).
 

 ¶ 19. The trial courts are instructed to take the following steps after a
 
 Bat-son
 
 objection has been made:
 

 (1) the defendant must make a prima facie showing that the prosecutor has exercised his peremptory challenges on the basis of race, (2) if the requisite showing has been made, the burden shifts to the prosecution to articulate race-neutral explanations for striking the jurors in question, and (3) the trial court has the duty of determining whether the defendant has carried his burden of proving purposeful discrimination.
 

 White,
 
 964 So.2d at 1184(5) (citing
 
 Hernandez v. New York,
 
 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)).
 

 ¶ 20. In the case before the Court, the State used four of its six peremptory strikes to eliminate African Americans from the venire: Ms. Cotton
 
 [1]
 
 ; Charlotte Veal; Katilya Harris; and Antoine Collins. After the State made its strikes, Butler
 
 *117
 
 made a
 
 Batson
 
 challenge, stating that “the State ha[d] struck nothing but black jurors.” The State responded that it had accepted “several black jurors as well.” The trial judge then took the challenge under advisement until the end of the jury-selection process. At the close of jury selection, the trial judge ruled: “The State has not exercised all of its peremptory challenges which means in the view of the Court the prima facie case of a
 
 Batson
 
 violation has not been made by the defendant, therefore, the
 
 Batson
 
 challenge will be denied.”
 
 See Dennis,
 
 555 So.2d at 681 (finding no
 
 Batson
 
 violation when the prosecutor exercised five of his seven peremptory challenges against African Americans; where prosecutor offered to provide race-neutral reasons when none were required; and where one African American juror was selected for the jury).
 

 ¶ 21. Because the trial judge found that Butler failed to make out a prima facie case of a
 
 Batson
 
 violation, the State was not required to provide race-neutral reasons for striking Cotton, Veal, Harris, and Collins.
 
 See White,
 
 964 So.2d at 1184(5). However, we note that the State had previously challenged Cotton and Harris for cause based upon what the trial court apparently considered race-neutral reasons. The record reflects that Cotton had several experiences with law enforcement and a pending criminal matter in which her daughter was the alleged victim of sexual assault. Harris was challenged because of her work as a therapist treating drug and alcohol addicts. The trial court denied the State’s for cause challenges against Cotton and Harris.
 

 ¶ 22. Butler bore the burden to show, among other things, that the State’s use of peremptory challenges, and any other relevant circumstances, raised an inference that the government excluded the jurors in question based on their race.
 
 See Dennis,
 
 555 So.2d at 681. All Butler contended at trial was that “the State had struck nothing but black jurors” with its peremptory strikes. Based upon the foregoing, we find that the trial judge did not abuse his discretion in finding that Butler’s
 
 Batson
 
 challenge failed to raise an inference that the State’s peremptory strikes were based on race.
 
 See id.
 

 III. Cross-examination of Chandler
 

 ¶ 23. Butler contends that the trial court erred in allowing, over Butler’s objection, the State to question Chandler about her sons’ criminal records because such evidence was cumulative, prejudicial, and irrelevant and, therefore, should not have been permitted. The State argues that the trial court correctly permitted the State’s cross-examination of Chandler regarding her sons’ criminal records as it was relevant and admissible to show Chandler’s possible bias in her testimony against the State. Upon our review of the record, we find that the trial court did not abuse its discretion in this matter.
 

 ¶ 24. “The standard of review regarding the admission or exclusion of evidence is abuse of discretion.”
 
 Mason v. State,
 
 971 So.2d 618, 620(11) (Miss.Ct.App.2007) (citation omitted). “Absent an abuse of that discretion, the trial court’s decision will not be disturbed on appeal.”
 
 Id.
 
 (citation omitted). Mississippi Rule of Evidence 616 permits a party to inquire into a witness’s bias, prejudice, or interest in a case for the purpose of attacking a witnesses’s credibility. Moreover, “wide latitude is allowed in cross-examination when the chosen form of impeachment is by proof of bias, prejudice, or motive.”
 
 Fort v. State,
 
 752 So.2d 458, 462(17) (Miss.Ct.App.1999) (citation omitted). A limitation on the admissibility of evidence arises pursuant to Mississippi Rule of Evidence 403. Rule 403 states: “Although relevant, evidence may be excluded if its probative
 
 *118
 
 value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”
 

 ¶25. In the case at bar, Butler called Chandler as a witness to the events that took place on October 25, 2003, at the Chuk Stop car wash. On direct examination, Chandler testified that she was present the night Butler was arrested and that she did not see Butler throw any drugs on the ground. In turn, during cross-examination, the prosecutor questioned Chandler about her son’s murder conviction, eliciting testimony that he himself had been the prosecutor at her son’s murder trial. Butler raised several objections as to relevance. The prosecution responded to Butler’s continuing objection by stating that the line of questioning went to Chandler’s bias against the State. The trial judge overruled all of Butler’s objections.
 

 ¶ 26. After the prosecutor asked Chandler about her son’s murder conviction, he then elicited testimony from Chandler wherein she admitted that she could not have seen whether Butler had thrown anything to the ground or not on the night he was arrested. Essentially, Chandler admitted that she could not have observed Butler’s actions before his arrest because of her position and because she was standing in the dark. Following this testimony, the prosecutor then returned to the issue of bias, questioning Chandler very briefly about her other son, who was then still in the custody of the MDOC. Again, he asked only the facts regarding her son’s status and then moved on.
 

 ¶ 27. Upon Butler’s objections to the questions about Chandler’s sons, the prosecutor clearly stated that they were relevant to show the bias of the witness against the State.
 
 See
 
 M.R.E. 616. Butler requested, and the trial court granted, an instruction limiting the jury to consider the testimony about her sons’ criminal convictions only to determine Chandler’s possible bias against the State. We find that granting such an instruction is presumed to cure any possible prejudice or confusion on the jury’s part.
 
 See Burnside v. State,
 
 912 So.2d 1018, 1024(11) (Miss.Ct.App.2005) (finding that limiting instructions are generally presumed to cure possible error) (citation omitted).
 

 ¶ 28. Moreover, we find that the trial court properly allowed the prosecution latitude in cross-examining Chandler about her sons’ criminal histories so as to show possible bias.
 
 See Fort,
 
 752 So.2d at 462(17) (stating that “wide latitude is allowed in cross-examination when the chosen form of impeachment is by proof of bias.... ”). Because we find that the trial court did not abuse its discretion in permitting the State to impeach Chandler for the purpose of showing bias, we find that this issue is without merit.
 
 See Mason,
 
 971 So.2d at 620(11).
 

 IV. Butler’s Motion to Suppress
 

 ¶29. Butler argues that his arrest was unlawful because Officer Reed failed to possess probable cause to arrest him. As a result, Butler contends that “the evidence seized as a result of said arrest should have been suppressed.” In contrast, the State argues that Officer Reed possessed probable cause to arrest Butler when he observed a crowd at the Chuk Stop drinking alcohol in violation of a city ordinance and then saw Butler drop at his feet what Officer Reed believed to be a bag of crack cocaine. The State contends that the trial court properly admitted recovered crack cocaine. For the reasons stated below, we find that the trial court did not abuse its discretion in admitting the recovered crack cocaine into evidence at trial.
 

 
 *119
 
 ¶ 30. “Probable cause exists where the arresting officer has facts and circumstances within his knowledge which are sufficient within themselves to warrant a man of reasonable caution to believe that a person has committed an offense.”
 
 Young v. State,
 
 562 So.2d 90, 91 (Miss.1990) (citation omitted). Additionally, our case law provides “for the warrantless arrest of a suspect for a misdemeanor offense committed in the officer’s presence.”
 
 McCoy v. State,
 
 811 So.2d 482, 483(13) (Miss.Ct.App.2002) (citation omitted). Moreover, “no warrant is required to seize an object in plain view when viewed by an officer from a place he has the lawful right to be, its incriminating character is readily apparent and the officer has a lawful right of access to the evidence.”
 
 Howard v. State,
 
 987 So.2d 506, 510(13) (Miss.Ct.App.2008) (citation omitted).
 

 ¶ 31. Here, Butler essentially argues that because Officer Reed did not field test the drugs recovered by Butler’s feet, that Officer Reed did not “know” whether the substance recovered was, in fact, crack cocaine. Butler, therefore, contends that “[i]n light of Officer Reed[’s] lack of training, [Officer Reed] could not have formed the requisite probable cause that ... Butler was in possession of cocaine at the time of his arrest.” We disagree.
 

 ¶32. Again, on the night in question, Officer Reed saw a group of people at the Chuk Stop drinking alcohol in violation of a city ordinance.
 
 See Young,
 
 562 So.2d at 91. This fact alone gave Officer Reed authority under the law to carry out war-rantless arrests of those he saw drinking alcohol in violation of the city ordinance.
 
 See McCoy,
 
 811 So.2d at 483(13) (stating that it is lawful for an officer to carry out a warrantless arrest of a suspect for a misdemeanor offense committed in the officer’s presence).
 

 ¶ 33. When Officer Reed approached the group, he saw Butler take something from his pocket and drop it. Officer Reed directed Butler to stop and retrieved the bag Butler had dropped by his feet.
 
 See Howard,
 
 987 So.2d at 510(13) (providing that “no warrant is required to seize an object in plain view when viewed by an officer from a place he has the lawful right to be, its incriminating character is readily apparent”). Believing the contents of Butler’s abandoned plastic bag to be that of crack cocaine, Officer Reed arrested Butler.
 
 See id.
 
 We find that under these facts, Officer Reed had more than sufficient probable cause to arrest Butler.
 
 See Young,
 
 562 So.2d at 91;
 
 see McCoy,
 
 811 So.2d at 483(13). Therefore, we find that the trial court did not err when it admitted the recovered crack cocaine into evidence.
 

 1134. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SIX YEARS TO SERVE, TWO YEARS SUSPENDED, AND TWO YEARS OF SUPERVISED PROBATION, AND TO PAY A FINE OF $2,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . Ms. Cotton's first name is not available in the record.