914 So.2d 200 (2005)
Christopher Jerome DAVIS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00988-COA.
Court of Appeals of Mississippi.
April 19, 2005.
Rehearing Denied August 2, 2005.
Certiorari Denied November 10, 2005.
*201 Joe Carl Jordan, Tristan Russell Armer, for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
KING, C.J., for the Court.
¶ 1. Christopher Jerome Davis was convicted in the Circuit Court of Jackson County of capital murder. He was sentenced to life imprisonment without the possibility of parole in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Davis has appealed and raised the following issues which we quote verbatim:
I. The trial court erred by constructively amending the indictment in an improper and substantive manner in violation of appellant's Fifth Amendment rights by instructing the jury that it must convict the appellant of capital murder if it found that he acted without any premeditated design.
II. In the alternative, the indictment failed to adequately inform the appellant of the nature of the charges against him in violation of his Fifth and Sixth Amendment rights.
III. The trial court erred in failing to conduct a sentencing hearing to determine whether the defendant would be sentenced to life with the possibility of parole or life without the possibility of parole, in violation of Mississippi Code § 97-3-21.
IV. The court erred in failing to limit its instructions to the jury to require a finding of deliberate design, malice aforethought or premeditation in violation of appellant's Fifth Amendment right by instructing the jury that it must convict the appellant of capital murder if it found that he acted without any premeditated design.
*202 V. The Mississippi capital murder statute is unconstitutional as written or as applied for allowing a conviction based upon depraved heart rather than a specific intent to kill.
VI. The evidence was insufficient to support the defendant's conviction for capital murder because there was no evidence of deliberate design, i.e., specific intent, to kill Officer Bruce Evans.
VII. The evidence was insufficient to support the defendant's conviction for capital murder because there was no evidence that (1) the defendant saw Officer Evans at the scene or (2) that the defendant could identify Officer Evans as a police officer in the seconds before the collision.
VIII. The defendant's Fifth and Sixth Amendment rights against self-incrimination and to trial by impartial jury were violated by the prosecutor's improper comments during closing arguments.
IX. The prosecutor's closing was a comment on Davis' failure to testify and violated the defendant's Fifth Amendment privilege.
X. The trial court erred in refusing the defendant's jury charge on circumstantial evidence as there was no direct evidence of intent to kill or knowledge that the defendant knew that the victim was a police officer.
XI. The court erred in failing to sequester the jury during the appellant's trial for capital murder in contravention of appellant's Sixth Amendment rights and state law.

FACTS
¶ 2. On July 18, 2000, George County Officers Richard Solomon and Casey Mitchell were traveling north in a forty-five mile per hour zone on Evanston Road in their marked patrol car. A blue Ford truck, driven by an individual later identified as Davis, passed the officers going in the opposite direction at a high rate of speed. Officer Mitchell advised Officer Solomon to follow the vehicle.
¶ 3. The vehicle turned onto a dirt road and into a private driveway. The officers passed the driveway where Davis was located, then discovered the vehicle, so they turned around, turned on the "blue lights," and came back to the driveway.
¶ 4. When the officers pulled into the driveway, Davis, who had backed into the driveway, passed the officer's vehicle and continued on.
¶ 5. Officer Solomon testified that Davis was "constantly driving his truck into the on-coming traffic." The Jackson County Sheriff's Office was advised that the pursuit was approaching their jurisdiction.
¶ 6. Davis crossed the county line where he saw the Jackson County officers, and he pulled over to the side of the road. The George County officers then pulled over. Investigator J.D. Mitchell, who had joined the pursuit, placed his vehicle face to face with Davis' vehicle. As Investigator Mitchell exited the vehicle, Davis "spun his truck around" and "went towards Jackson County and that's when" Officer Solomon "started firing at the vehicle." At that time, Investigator Mitchell and the other officers continued to follow Davis.
¶ 7. Solomon stated that Davis appeared to be in control of the vehicle. The pursuit continued near Highway 613 South towards Robert's Grocery in Jackson County. As Davis approached the area, he pulled over to the side of the road a third time and spun the vehicle around to go back towards George County. Jackson County Officers Charles Braden and Bruce Evans were parked just north of Robert's Grocery. Jackson County Officer Robert Blocker testified that:

*203 I was 75 to 100 feet behind the blue Ford pickup truck. As we approached Robert's Grocery, just coming in the light of the backdrop of the store, I saw the muzzle flash of a shotgun. I saw Officer Evans standing at the passenger side, front tire of his car. There's a muzzle flash. At that point, I saw the truck make an immediate left turn towards Officer Evans. I saw him lower his shotgun and turn to run and the truck impacted the front of his patrol car. And when the truck hit the front of his car, when it left the highway, it kind of  the rear end kind of hydroplaned around, hit the front of his patrol car, and spun back around, and the truck ended up pointing kind of north, northeast, and Officer Evans' car was pointing east. I pulled up to the truck, exited my patrol car, drew my duty weapon, approached the vehicle, ordered the driver out onto the ground.
¶ 8. The pursuit lasted for approximately twenty-eight miles. Officer Braden testified that he fired a shot at the "front driver's tire" of the vehicle, but later realized that he had missed.
¶ 9. The front driver's side tire of Davis' vehicle was examined. The tire was deflated, but still intact. Davis' vehicle struck Officer Evans' vehicle and killed him.
¶ 10. David Kenny, an accident reconstructionist, testified that "[t]here was nothing that, that would make the F-150 [Davis' vehicle] swerve to the left toward the actual parked vehicle in the parking lot." Kenny indicated that Davis' vehicle was traveling approximately fifty to sixty miles per hour when he hit Evans' vehicle at Robert's Grocery.
¶ 11. Steve Byrd, an expert firearms examiner, stated that the bullet holes in one tire were consistent with holes which would have been made by a .45 caliber gun.
¶ 12. On August 14, 2002, Davis was indicted for capital murder pursuant to Mississippi Code Annotated Section 97-3-19(2)(a) (Rev.2000). Davis' trial was held from January 13-16, 2003. Davis was found guilty and sentenced to life imprisonment without the possibility of parole.
¶ 13. On January 27, 2003, Davis filed a motion for a new trial, which was subsequently denied.

ISSUES AND ANALYSIS

I.

Whether the trial court erred by constructively amending the indictment.
¶ 14. Davis argues that the trial court constructively amended the indictment by instructing the jury to find him guilty if it found that he "acted in an eminently dangerous manner to others and evinced a depraved heart, regardless of human life and without any premeditated design to effect the death of Deputy Bruce Evans."
¶ 15. Davis asserts that the original indictment charged him with killing Officer Evans "feloniously, wilfully and of his malice aforethought," or deliberate design murder. He maintains that the submission of an instruction on depraved heart murder was a constructive amendment of the indictment.
¶ 16. In Catchings v. State, 684 So.2d 591, 599 (Miss.1996), the supreme court stated:
With regard to the murder statute, subsections (a) and (b) have "coalesced." Indeed, [t]here is no question that the structure of the statute suggests two different kinds of murder: deliberate design/premeditated murder and depraved heart murder. The structure of *204 the statute suggests these are mutually exclusive categories of murder. Experience belies the point. As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. Our cases have for all practical purposes coalesced the two so that Section 97-3-19(1)(b) subsumes (1)(a).
"The supreme court has consistently held that depraved heart murder subsumes `deliberate design/premeditated murder.' Therefore, the depraved heart murder instruction did not constructively amend the indictment." Brown v. State, 781 So.2d 925(¶ 14) (Miss.Ct.App.2001) (see Schuck v. State, 865 So.2d 1111(¶ 19) (Miss.2003)). This Court finds that the instruction did not constructively amend the indictment.

II.

Whether the indictment adequately informed Davis of the nature of the charges against him.
¶ 17. Davis claims the indictment fails to specifically inform him of the subsection under which the State planned to proceed with the charge against him. The indictment against Davis states the following:
CAPITAL MURDER
Section 97-3-19(2)(a), Miss.Code of 1972, as amended
...
That Christopher Jerome Davis in Jackson County, Mississippi, on or about July 18, 2000, did then and there feloniously, wilfully and of his malice aforethought kill and murder Bruce Evans, a human being, while Bruce Evans was acting in his official capacity as a peace officer, to-wit: Deputy Sheriff of Jackson County, MS; that at the time of the killing Christopher Jerome Davis knew that Bruce Evans was a peace officer; and that the killing of Bruce Evans was contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.
Davis maintains that because of the lack of information regarding the type of murder charged, he could not sufficiently prepare his defense.
¶ 18. Pursuant to Uniform Circuit and County Court Rule 7.06, an indictment shall contain the following:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
1. The name of the accused;
2. The date on which the indictment was filed in court;
3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
4. The county and judicial district in which the indictment is brought;
5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
6. The signature of the foreman of the grand jury issuing it; and
7. The words "against the peace and dignity of the state."
¶ 19. In addition to the above requirements, when the charge is capital murder, *205 Mississippi Code Annotated Section 99-17-20 (Rev.2000) provides that "No person shall be tried for capital murder, or any other crime punishable by death as provided by law, unless such offense was specifically cited in the indictment returned against the accused by setting forth the section and subsection number of the Code defining the offense alleged to have been committed by the accused." It is the intent of Section 99-17-20 that the relevant code section be cited to place the defendant on notice as to what makes the offense a capital one. Gray v. State, 728 So.2d 36 (¶ 173) (Miss.1998); Rhymes v. State, 356 So.2d 1165, 1167 (Miss.1978). The indictment in this case cites to code section 97-3-19(2)(a) (Rev.2000) which made this a capital offense, and informs the defendant of what makes his offense a capital crime.
¶ 20. The Court finds no merit in this issue.

III.

Whether the trial court erred in failing to conduct a sentencing hearing.
¶ 21. Davis argues that he should have received a sentencing hearing because Mississippi Code Annotated Section 97-3-21 (Rev.2000) indicates that there are three possible sentences to be given following a conviction for capital murder. According to Section 97-3-21, "[e]very person who shall be convicted of capital murder shall be sentenced (a) to death; (b) to imprisonment for life in the State Penitentiary without parole; or (c) to imprisonment for life in the State Penitentiary with eligibility for parole as provided in Section 47-7-3(1)(f)." Once the State decided not to pursue the death penalty against Davis, two possible sentences remained available.
Miss.Code Ann. § 99-19-101(1) states in pertinent part that "[u]pon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment." Miss.Code Ann. § 47-7-3(1)(f) states "[n]o person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment under the provisions of Section 99-19-101." The reading of these statutes together indicate that a defendant on trial for capital murder may only be sentenced to death or life imprisonment without the eligibility of parole. According to § 47-7-3(1)(f), there is no longer the possibility of life imprisonment.
Flowers v. State, 842 So.2d 531(¶ 77) (Miss. 2003).
¶ 22. The trial court stated:
BY THE COURT: Based upon that verdict, Mr. Davis, and upon your conviction for capital murder, it is incumbent upon me to sentence you. The only sentence available under the law for a conviction of this nature, given that the State has waived the possible imposition of the death penalty, is that you shall spend the rest of your natural life in the custody of Mississippi Department of Corrections without the possibility of patrol [sic]. That is the sentence of this Court, and I will remand you to the custody of the Sheriff of Jackson County for carrying it out.
¶ 23. Because Davis did not request a sentencing hearing prior to the imposition of his sentence, this issue is procedurally barred. Peterson v. State, 740 So.2d 940(¶ 30) (Miss.Ct.App.1999). Even absent a procedural bar, this issue would lack merit. In Pham v. State, 716 So.2d *206 1100(¶ 21) (Miss.1998), the supreme court stated:
Thus, although under the relevant code provisions, while there is the apparent necessity of a choice between death, life, and life without parole, in reality there is really only a choice between death and life without parole in the capital case in this context. Obviously, if the State is not seeking the death penalty, the only possible sentence for conviction of capital murder committed after July 1, 1994, the effective date of § 47-7-3, is life without parole; and, this is the only sentence which the jury could have given Pham. Thus, the question is whether a trial judge may impose the only possible sentence without formally returning the matter to the jury for sentencing. We find that he can.
Id. Therefore, this issue is without merit.

IV.

Whether the trial court erred by failing to limit jury instructions regarding deliberate design, malice aforethought, or premeditation.
¶ 24. Davis contends that the trial court erred by failing to limit its instructions to the jury to require a finding of deliberate design, malice aforethought, or premeditation. Davis argues that the court instructed the jury that if it found that Davis "committed an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without premeditated design to effect the death of Bruce Evans ...," then he could be found guilty of capital murder.
¶ 25. Davis cites Lancaster v. State, 472 So.2d 363 (Miss.1985) in which instructions to the jury regarding deliberate design and the elements of capital murder were given. In Lancaster, the court determined that the instructions given "properly set forth the elements of capital murder," and that the "term `deliberate design' as used in these instructions is synonymous to the phrase `malice aforethought.'" Id. at 367.
¶ 26. This Court's resolution of issue one leads to the conclusion that this issue is without merit.

V.

Whether the capital murder statute is unconstitutional.
¶ 27. Davis claims the current Mississippi capital murder statute is unconstitutional. He alleges that Mississippi Code Annotated Section 97-3-19(2) (Rev. 2000) violates the Eighth and Fourteenth Amendments of the United States Constitution because if one is found guilty, it may be based on a finding of a depraved heart and does not require a finding of specific intent for a charge of capital murder.
¶ 28. Walker v. State, 863 So.2d 1(¶ 78) (Miss.2003) addressed the constitutionality of Mississippi's capital murder statute. The supreme court held "that the fact Mississippi's capital murder scheme makes the death penalty a possible punishment for felony murder where there is no requirement to prove an intent to kill, and not premeditated murder, does not make the Mississippi capital murder statute unconstitutional.... This same argument has been rejected as it relates to depraved heart murder."
¶ 29. Because this issue has been addressed by the supreme court, this Court finds the issue to be without merit.

VI. & VII.

Whether the evidence is sufficient to sustain a guilty verdict for capital murder.
¶ 30. Davis contends that the evidence did not establish capital murder.
*207 ¶ 31. First, Davis argues that capital murder requires the intent to kill a specific person who is killed. He maintains that the State failed to provide such proof.
¶ 32. Next, Davis claims that there was no evidence showing that he saw Officer Evans at the scene. The incident occurred at night and other police vehicles were in the area. As a result, Davis argues that no evidence was presented to show that he saw anyone standing in the parking lot or that he knew Evans was in the area. In his brief, Davis indicates that everything happened in a matter of seconds. He asserts that the evidence is insufficient because the above was not established.
¶ 33. When reviewing matters where the sufficiency of the evidence is questioned, "the evidence which supports the verdict is accepted as true by the reviewing court, and the State is given the benefit of all reasonable inferences flowing from the evidence." Dumas v. State, 806 So.2d 1009(¶ 7) (Miss.2000).
¶ 34. The State presented the testimony of Officer Robert Blocker who indicated that he saw what transpired. The State presented testimony that Davis was followed by officers in marked patrol cars with flashing lights. The credibility of the witnesses' testimony and its weight is for the jury to resolve. Burrell v. State, 613 So.2d 1186, 1192 (Miss.1993). The jury resolved those issues in favor of conviction. There is in the record substantial credible evidence upon which such a verdict could be based. Therefore, this Court finds no merit in this issue.

VIII. & IX.

Whether Davis' Fifth and Sixth Amendment rights were violated by the prosecutor's comments during closing arguments.
¶ 35. Davis argues that comments made by the prosecutor during closing arguments violated his right against self-incrimination and the right to a trial by an impartial jury.
¶ 36. During closing argument, the prosecutor stated in part, the following:
BY MR. SAUCIER: I'll start over again, please, sir. My name is Christopher Davis. On July the 18th of the year 2000, I made a conscious and deliberate decision. At 8:25 p.m., and for 22 minutes after that, I made a conscious decision that I was going to avoid capture at all costs. As a matter of fact, I was going to avoid capture even if it caused injury or death to members of the community. And to go a step further, I, in fact, demonstrated that when I avoided capture three times prior to the incident that took the life of a citizen of Jackson County.
¶ 37. In this case, Davis objected to the prosecutor's comments and argued that the prosecutor had violated his Fifth Amendment privilege against self-incrimination because there were no statements made by Davis during the trial. Davis asserts that because the prosecution presented its closing argument in a narrative form as if the defendant were speaking, such a presentation commented on Davis' failure to testify. Additionally, Davis claims the prosecutor made other comments "which were designed to impassion and unjustly prejudice the jury."
¶ 38. The trial judge held that the prosecutor was presenting his closing argument and therefore overruled the objection. "The often-stated general rule is that wide latitude is given attorneys in making closing arguments." Robinson v. State, 733 So.2d 333(¶ 13) (Miss.Ct.App. 1998). "Where a prosecutor has made an improper argument, the question on appeal is `whether the natural and probable *208 effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created.'" Howell v. State, 860 So.2d 704 (¶ 206) (Miss.2003). Given the evidence presented, this Court cannot say that the verdict was occasioned by unjust prejudice.

X.

Whether the trial court erred by denying Davis' instruction on circumstantial evidence.
¶ 39. Davis claims the trial court erred by failing to grant his instruction on circumstantial evidence. His instruction D-3 reads as follows:
Intent to do an act or commit a crime is a question of fact to be gleaned by the jury from the facts shown in each case. The intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent.
Unless one expresses his intent, the only method by which intent may be proven is by showing the acts of the person involved at the time in question, and by showing the circumstances surrounding the incident.
The Court further instructs the Jury that unless it finds, beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that CHRISTOPHER J. DAVIS, did on July 18, 2000, knowingly, willfully, and purposely kill BRUCE EVANS, you must find CHRISTOPHER J. DAVIS "Not Guilty" of capital murder.
The prosecutor objected to this instruction indicating that this was not a circumstantial evidence case, and the trial court agreed. Davis asserts that there was no direct evidence of his intent to kill Officer Evans, nor was there direct evidence that he identified Evans as a police officer prior to the collision of the vehicles.
¶ 40. Davis claims that while Officer Blocker testified that he saw Evans standing near the patrol car, there was no evidence that Davis saw Evans standing near the patrol car. Davis maintains that he was entitled to an instruction regarding circumstantial evidence.
¶ 41. "The rule in Mississippi is that a circumstantial evidence instruction should be given only when the prosecution can produce neither eyewitnesses or a confession to the offense charged." Stringfellow v. State, 595 So.2d 1320, 1322 (Miss. 1992). In this case, the State presented the eyewitness testimony of Officer Blocker, who was present at the scene. Therefore, this issue is without merit.

XI.

Whether the trial court erred in failing to sequester the jury.
¶ 42. Davis contends that the trial court erred by failing to sequester the jury during the trial. He alleges a violation of his Sixth Amendment right to an impartial jury occurred when the trial judge allowed the jurors to go home each night. He also argues that he was not notified that the State decided not to seek the death penalty until the Friday before his trial which began the following Monday. Davis claims had he received timely notice of the State's decision, he would have been able to request sequestration of the jury pursuant to Rule 5.07 of the Rules of Criminal Procedure.
¶ 43. The record before this Court does not reflect that a request was made.
¶ 44. Rule 10.02 of the URCCC reads as follows:

*209 In any case where the state seeks to impose the death penalty, the jury shall be sequestered during the entire trial.
In all other criminal cases, the jury may be sequestered upon request of either the defendant or the state made at least 48 hours in advance of the trial. The court may, in the exercise of sound judicial discretion, either grant or refuse the request to sequester the jury. In the absence of a request, the court may, on its own initiative, sequester a jury at any stage of a trial.
¶ 45. In this case, the trial court instructed the jurors in the following manner: "Now, you have not heard any testimony, evidence been produced in this case whatsoever. There may be some ... And until you do so, you are not to deliberate among yourselves during any of the breaks, during the course of the trial or overnight or any other time, discuss anything about this particular case, either among yourselves or with your family members." Jurors are presumed to have followed the instruction of the court where nothing in the record suggests otherwise. Shelton v. State, 728 So.2d 105(¶ 30) (Miss. Ct.App.1998). This issue is without merit.
¶ 46. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.