# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00252-SCT

*FRANKLIN FITZPATRICK a/k/a FRANKLIN L. FITZPATRICK*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/2013 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| TRIAL COURT ATTORNEYS: | JOSHUA A. TURNER |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN T. COOK |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | BEN CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/23/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Franklin Fitzpatrick murdered Sheriff's Deputy Dewayne Crenshaw. He was

convicted and sentenced to life in prison without the possibility of parole. Three issues are

raised on appeal: (1) whether the jury instruction allowed for conviction without a proper

showing of the requisite mental state, (2) whether the trial court erred when it overruled

Fitzpatrick's motion for new trial based on the weight of the evidence, and (3) whether

Fitzpatrick is procedurally barred from challenging the elements jury instruction on appeal

because he did not object to it at trial. Because the jury instruction was a correct statement of the law, and Fitpatrick's arguments are otherwise without merit, we affirm Fitzpatrick's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. On December 2, 2010, Franklin Fitzpatrick and Joani Clifton purchased a synthetic stimulant commonly referred to as "bath salts" from a convenience store in Mantachie, Mississippi.[1] These synthetic drugs can cause individuals to become aggressive and hallucinate, experiencing what is referred to as amphetamine psychosis. At the time Fitzpatrick purchased and consumed the drug, bath salts were not illegal under Mississippi law.

¶3. After obtaining the bath salts, Fitzpatrick and Clifton drove to Pontotoc, where they both consumed some of the drug. Afterward, the two went to the home of Matt Thrasher, a friend of Clifton, in Tippah County. There, Fitzpatrick ingested more bath salts and consumed marijuana and crystal methamphetamine.

¶4. In the early morning hours of December 3, it became apparent that Fitzpatrick had "taken too much" bath salts, and he began to act erratic. At one point, Fitzpatrick took out his cell phone and called Clifton, who was seated right next to him. He began sweating, hallucinating, "talking out of his head," and claiming to see the devil.

---

[1] The term "bath salts" is a euphemism used by manufacturers of synthetic designer drugs. The actual chemical Fitzpatrick ingested was 3, 4-methylenedioxypyrovalerone, or MDPV.

2

¶5. Thrasher brought Fitzpatrick a wet rag to cool him off, but Fitzpatrick became aggressive and the two started to fight. Thrasher stated Fitzpatrick was "slinging [him] around like a rag doll," but he somehow broke loose. Thrasher then ran to his parents' house, which was nearby, and called 911. Clifton and Fitzpatrick left in Clifton's vehicle, but shortly after pulling away, Clifton decided she was too intoxicated to handle a hallucinating and aggressive Fitzpatrick while driving. She also was scared that Fitzpatrick would "hurt [her]," so she drove back to Thrasher's house. Deputies from the Tippah County Sheriff's Department soon arrived.

¶6. Deputy Rodney Callahan was the first officer on the scene. When he got to Thrasher's house, Fitzpatrick was pacing in the driveway wearing just a t-shirt and sweating profusely, despite it being a chilly December night. Deputy Callahan recalled that Fitzpatrick was "really wet" when he arrived and that the whites of Fitzpatrick's eyes were "really large." Officer Callahan testified that Fitzpatrick kept pacing back and forth, licking his lips. Fitzpatrick repeatedly requested that Deputy Callahan pray with him, and he kept saying that he thought the devil was "coming to get" him. Deputy Callahan described Fitzpatrick as irrational and hallucinating.

¶7. Deputy Callahan asked Fitzpatrick what was going on, but Fitzpatrick just kept repeating that the devil was coming for him. Unable to discern whether Fitzpatrick was on drugs or suffering from some medical condition, Deputy Callahan called an ambulance. Fitzpatrick then approached Deputy Callahan, touching the sleeve of his uniform as he asked Deputy Callahan to pray with him. Deputy Callahan advised Fitzpatrick not to approach him

like that again or he would tase him. Fitzpatrick backed off, and Deputy Callahan spent the next several minutes trying to get Fitzpatrick to calm down. Fitzpatrick, however, began expressing his fear that Deputy Callahan might shoot him, although the Deputy never drew his weapon and repeatedly told Fitzpatrick that he only wanted to talk.

¶8.     Within minutes of Deputy Callahan's arrival, Deputy Dewayne Crenshaw also arrived. The deputies continued to try to calm Fitzpatrick down but concluded it was best for his and their own safety if they restrained Fitzpatrick. When the deputies attempted to handcuff him, Fitzpatrick resisted, and a scuffle ensued. During this encounter, Fitzpatrick gained control of  Deputy Callahan's service weapon and used it to kill Deputy Crenshaw.  When he first heard the shots, Deputy Callahan thought Deputy Crenshaw had shot Fitzpatrick, but when he reached for his weapon and it was not there, he realized what had happened. Fitzpatrick had yanked Deputy Callahan's weapon from his holster during the struggle and had used it to shoot Deputy Crenshaw.

¶9.     Deputy Callahan immediately took cover behind Clifton's SUV, which was parked in front of his patrol car. From there, he noticed Fitzpatrick no longer had the pistol, so he decided to try to subdue him. An intense struggle ensued, but Deputy Callahan could not gain the upper hand. Fortunately, at this point, the ambulance that Deputy Callahan had requested when he first got to Thrasher's house arrived.

¶10.    Deputy Callahan, despite being in a fierce struggle with Fitzpatrick, told the paramedics to first check on Deputy Crenshaw, but it was too late. Deputy Crenshaw was

dead. After tending to Deputy Crenshaw, the paramedics joined the struggle to subdue Fitzpatrick. In the end, it took four or five people to bring Fitzpatrick under control.

¶11. Several witnesses testified that Fitzpatrick was incoherent and acting bizarrely during this whole ordeal. In fact, one paramedic stated that Fitzpatrick "probably didn't know he was doing like he was. When he was wrestling with us, I don't even know if he knew he was wrestling with us."

¶12. Once in custody, Fitzpatrick was taken to the emergency room of a nearby hospital. A search warrant was obtained for his blood, which tested positive for marijuana and methylenedioxypyrovalerone (MDPV), the chemical component in bath salts. A subsequent urine analysis also showed Fitzpatrick had methamphetamine in his system at the time.

¶13. Later, Fitzpatrick, after waiving his *Miranda*[2] rights, gave a statement to the police. He claimed he had no recollection of the events that night after he and Clifton returned to Thrasher's house after attempting to leave.

¶14. On January 18, 2011, a Tippah County grand jury returned an indictment against Fitzpatrick, charging him with capital murder of a peace officer. After a change of venue, Fitzpatrick was tried in Lafayette County with jurors from Attala County. On May 9, 2013, the jury returned a verdict of guilty of capital murder. Fitzpatrick waived his right to a sentencing hearing, and the State recommended he be sentenced to life without parole for the murder of a police officer and as a habitual offender under Mississippi Code Section 99-19-81. Subsequently, Fitzpatrick filed a timely motion for a judgment notwithstanding the

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

5

verdict (JNOV) or alternatively a new trial, which the trial judge denied. Fitzpatrick now

appeals, raising two issues:[3]

> **1. Whether the State's elements instruction contained an improper statement of the law.**
>
> **2. Whether the trial court erred when it overruled Fitzpatrick's motion for a new trial because the overwhelming weight of the evidence does not support a conviction for capital murder of a peace officer.**

The State raises a third issue:

> **3. Whether Fitzpatrick is procedurally barred from challenging the elements jury instruction on appeal because he did not object to it at trial.**

### DISCUSSION

> **1. Whether the State's elements instruction contained an improper statement of the law.**

*Standard of Review*

¶15. Fitzpatrick's first issue asserts the trial court made an error of law regarding the *mens rea* requirement under Mississippi Code Section 97-3-19(2)(a). Because the interpretation of a statute is a question of law, we review *de novo*. ***Gilmer v. State***, 955 So. 2d 829, 833 (Miss. 2007).

*Analysis*

---

[3] The dissent raises a fourth issue regarding Fitzpatrick's indictment. Because this issue is not properly before the Court, we do not address it. *See **Smith v. State***, 986 So. 2d 290, 295 (Miss. 2008) ("This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider."); ***Montgomery v. State***, 891 So. 2d 179, 187 (Miss. 2004).

¶16.    Fitzpatrick contends the trial court erred in not requiring a finding of deliberate design or malice aforethought under Section 97-3-19(2)(a). The jury instruction allowed the jury to find Fitzpatrick guilty of capital murder if he acted with either deliberate design or a depraved heart. Because this jury instruction is consistent with the laws of Mississippi, we find the trial court applied the correct legal standard.

¶17.    Fitzpatrick was convicted of capital murder for killing an on-duty peace officer. Fitzpatrick argues the statute requires the State to prove malice aforethought, but the jury instruction allowed conviction without such a showing. This Court agrees that the elements instruction allowed Fitzpatrick to be convicted of capital murder of a police officer without a showing of malice aforethought; however, no such showing is required under the statute. *See* Miss. Code Ann. § 97-3-19(2)(a) (Rev. 2014).

¶18.    The statute, in pertinent part, states:

(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

(a) Murder which is perpetrated by killing a peace officer or fireman while such officer or fireman is acting in his official capacity or by reason of an act performed in his official capacity, and with knowledge that the victim was a peace officer or fireman . . . .

Miss. Code Ann. § 97-3-19(2)(a) (Rev. 2014).

¶19.    This Court has interpreted this statute as requiring no showing of malice aforethought or deliberate design. **Stevenson v. State**, 733 So. 2d 177, 186 (Miss. 1998), *overruled on other grounds by* **Bonds v. State**, 138 So. 3d 914 (Miss. 2014). In **Stevenson**, the Court provided that, because the "statute reflects the [S]tate's special interest in protecting law

7

enforcement officers . . . malice aforethought is not an element of the capital murder of a peace officer." **Stevenson**, 733 So. 2d at 186.

¶20.    While this holding is clear, Fitzpatrick argues that it is in conflict with **Mease v. State**, 539 So. 2d 1324 (Miss. 1989). In that case, the defendant did not deny that he shot a police officer but instead argued that the evidence showed "the gun fired as a result of a reflexive action not giving rise to the required elements of Section 97-3-19(2)(a) . . . ."[4] **Mease**, 539 So. 2d at 1328.  Prior to analyzing the merits of Mease's claim, the Court noted in a footnote that "murder" under the statute meant that a killing had been done with deliberate design. **Id.** at 1325 n.1.

¶21.    The Court reached this conclusion by finding that Section 97-3-19(1)(a) defined "murder" in Section 97-3-19(2)(a) as requiring deliberate design. At that time, Section 97-3-19(1)(a) provided:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
>
> > (a) When done with deliberate design to effect the death of the person killed, or of any human being.

Miss. Code Ann. § 97-3-19(1)(a) (1972).[5]  The statute went on, however,  to provide:

---

[4] Mease and the sheriff were in a struggle, during which Mease put a gun to the sheriff's head.  Unaware Mease was pointing a gun at the sheriff, a deputy struck Mease twice in the head with his pistol. The constable's pistol fired upon impact both times. Mease claimed these blows to the head caused him to reflexively and unintentionally shoot the sheriff. **Mease**, 539 So. 2d at 1327-28.

[5] This section was amended in 2013 and now provides:

> (a) When done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree

> (b) When done in the commission of an act eminently dangerous
> to others and evincing a depraved heart, regardless of human
> life, although without any premeditated design to effect the
> death of any particular individual.

*Id.*

¶22. In the years following ***Mease***, this Court has held that subsection (1)(b) subsumes

subsection (1)(a), and that the two have "coalesced." ***Catchings v. State***, 684 So. 2d 591,

599 (Miss. 1996). Recently, this Court clarified:

> [Section] 97-3-19(a) and (b), which define premeditated murder and depraved
> heart murder respectively have been "coalesced" by long standing and widely
> accepted case law because, as a matter of common sense, every murder done
> with deliberate design to effect the death of another human being is by
> definition done in the commission of an act imminently dangerous to others
> and evincing a depraved heart, regardless of human life. ***Catchings v. State***,
> 684 So. 2d 591, 599 (Miss. 1996). Thus, while depraved heart murder
> "subsumes" deliberate design murder, ***Catchings***, 684 So. 2d at 599 (quoting
> ***Mallett v. State***, 606 So. 2d 1092, 1095 (Miss.1992)), the inverse is not true.
> In other words, all murders committed with deliberate design to effect the
> death of the person killed necessarily require a depraved heart, but depraved
> heart murder does not require premeditated design. Miss. Code Ann. § 97-3-
> 19(a), (b) (Rev. 2006).

---

> murder;

> (b) When done in the commission of an act eminently dangerous
> to others and evincing a depraved heart, regardless of human
> life, although without any premeditated design to effect the
> death of any particular individual, shall be second-degree
> murder;

Miss. Code Ann. § 97-3-19(1) (Rev. 2014).

9

*Hawkins v. State*, 101 So. 3d 638, 642 (Miss. 2012) (internal quotations omitted). Accordingly, where depraved heart is sufficient for a conviction as a matter of law, a showing of deliberate design is not required. *See id.*

¶23.    While this Court has not addressed the issue since *Stevenson*, the Court of Appeals has done so on three occasions. *Husband v. State*, 23 So. 3d 550, 557-58 (Miss. Ct. App. 2009); *White v. State*, 964 So. 2d 1181, 1187 (Miss. Ct. App. 2007); *Davis v. State*, 914 So. 2d 200, 206 (Miss. Ct. App. 2005). Of these three opinions, *White* is the most applicable to Fitzpatrick's case. In *White*, the Court of Appeals held that allowing a conviction under Section 97-3-19(2)(a) based on depraved heart was not error because deliberate design and depraved heart have "coalesced." *White*, 964 So. 2d at 1187; *see also Stevenson*, 733 So. 2d at 186 (holding that malice aforethought is not required under Section 97-3-19(2)(a)); *Husband*, 23 So. 3d at 557-58; *Davis*, 914 So. 2d at 206.

¶24.    In *Husband*, two police officers responded to a domestic-abuse call. *Husband*, 23 So. 3d at 557. The police tried to take Husband in, but he resisted. *Id.* at 557-58. A struggle ensued, Husband gained control of one of the officer's weapons and used it to kill both policemen. *Id.* The jury instruction provided required a showing of deliberate design, but Husband claimed that, because such a showing was not required by the statute, its inclusion confused the jury. *Id.* The Court of Appeals acknowledged that the statute did not require a finding of deliberate design but held that the inclusion of that language was merely surplusage. *Id.* at 558. That is, because the statute requires something less than deliberate design, *i.e.*, depraved heart, inclusion of the higher standard was harmless error. *See id.*

¶25. This line of cases, however, does not stand for the proposition that the State does not have to meet the elements of murder. Section 97-3-19(2)(a) provides that the "murder" of a peace officer or firefighter is capital murder. The statute, however, fails to indicate which definition of "murder" from Section 97-3-19(1) applies. *See* Miss. Code Ann. § 97-3-19(2)(a); *see also **Stevenson***, 733 So. 2d at 186; ***Mease***, 539 So. 2d at 1328. Section 97-3-19(1) lists four possible definitions of the term "murder." Miss. Code Ann. § 97-3-19(1)(a)-(d). This Court and the Mississippi Court of Appeals have interpreted the statute to mean that "murder" in the context of Section 97-3-19(2)(a) means either depraved-heart murder or deliberate-design murder. *See **Stevenson***, 733 So. 2d at 186; ***Husband***, 23 So. 3d at 557-58; ***White***, 964 So. 2d at1187; ***Davis***, 914 So. 2d at 206. Consequently, the State must show the killing of the police officer (or firefighter) under Section 97-3-19(2)(a) was depraved-heart murder. *See **Catchings***, 684 So. 2d at 599; ***Stevenson***, 733 So. 2d at 186 (noting deliberate design is not required and the state's special interest in protecting law enforcement officers); ***White***, 964 So. 2d at 1187; ***Husband***, 23 So. 3d at 557-58.

¶26. Notwithstanding this line of cases and this Court's holding in ***Stevenson***, the dissent argues that, because the jury returned a general verdict and it was impossible to determine whether the jury unanimously found Fitzpatrick acted with a depraved heart or with deliberate design, Fitzpatrick is entitled to a new trial. This issue, however, was raised neither at trial nor on appeal. Fitzpatrick's objection at trial and his assignment of error on appeal is that the contested jury instruction is an incorrect statement of the law under Section 97-3-19. At no point has he argued that the jury instruction was inconsistent with his indictment,

11

or that the instruction constructively amended the indictment. Accordingly, this issue is not properly before the Court. *See Smith v. State*, 986 So. 2d 290, 295 (Miss. 2008) ("This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider."); *Montgomery v. State*, 891 So. 2d 179, 187 (Miss. 2004). Moreover, this issue does not rise to the level of plain error.

¶27.    The dissent relies on *Phillips v. State*, 493 So. 2d 350 (Miss. 1986); however, *Phillips* is distinguishable from the current case. The Court in *Phillips* provided, "If a jury has been instructed that it may rely on any one of two or more independent grounds, and *one of those grounds is insufficient*, a subsequent general verdict of guilty must be set aside because the verdict may have rested exclusively on the insufficient ground." *Phillips*, 493 So. 2d at 355 (emphasis added).  Here, there were two independent grounds; however, as discussed above, either ground would have been sufficient  to convict Fitzpatrick, *i.e.* the State could have indicted him for and convicted him of either deliberate design or depraved heart. *See Stevenson*, 733 So. 2d at 186; *Catchings*, 684 So. 2d at 599 (providing deliberate design and depraved heart have coalesced); *White*, 964 So. 2d at 1187. Consequently, *Phillips* is not controlling in the instant matter. And importantly, because the State could have indicted Fitzpatrick for and convicted him of either deliberate design or depraved heart, there has been no manifest miscarriage of justice. *See Flowers v. State*, 158 So. 3d 1009, 1043 (Miss. 2014) ("To reverse under the plain error doctrine, an error must have occurred and that error must have resulted in a manifest miscarriage of justice or seriously affected the fairness, integrity, or public reputation of judicial proceedings.").

¶28.    Therefore, we find the trial court committed no error in providing the jury instruction at issue.

**2. Whether the trial court erred when it overruled Fitzpatrick's motion for a new trial because the overwhelming weight of the evidence does not support a conviction for capital murder of a peace officer.**

*Standard of Review*

¶29.    "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Bush v. State***, 895 So. 2d 836, 844 (Miss. 2005).  While the court sits as a thirteenth juror when considering a motion for a new trial, this discretion should be exercised with the utmost "caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." ***Id.***

*Analysis*

¶30.    It is Fitzpatrick's contention that, because of his extreme intoxication, he was unable to form the mental state required for a deliberate-design murder, and at most was guilty of depraved-heart murder. As discussed above, deliberate-design murder and depraved-heart murder have coalesced, and therefore, Fitzpatrick's argument is without merit. *See* ***Stevenson***, 733 So. 2d at 186; ***Husband***, 23 So. 3d at 557-58; ***Davis***, 914 So. 2d at 206. In fact, in Fitzpatirck's brief, he admits "the overwhelming weight of the evidence shows that [he] should be convicted of depraved heart murder."

13

**3. Whether Fitzpatrick is procedurally barred from challenging the elements jury instruction on appeal because he did not object to it at trial.**

¶31. A defendant's failure to object to a jury instruction at trial creates a procedural bar that prohibits appellate review of the issue, unless there is plain error. *Berry v. State*, 728 So. 2d 568, 571 (Miss. 1999). Under such circumstances, this Court will find plain error only where a fundamental right of the defendant has been violated. *Id.*; *Heidelberg v. State*, 976 So. 2d 948, 949 (Miss. Ct. App. 2007). This would include where a jury instruction failed to contain an essential element of the offense. *Berry*, 728 So. 2d at 571; *see also Hawkins*, 101 So. 3d at 643 (noting that it is error, impacting a fundamental right of the accused, if a jury instruction omits an essential element of the crime).

¶32. Here, Fitzpatrick claims the jury instruction given failed to require the State to prove he murdered Deputy Crenshaw with deliberate design. But, as discussed above, the jury instruction given was proper; and therefore, there was no error. Accordingly, Fitzpatrick's challenge to the jury instruction is not only without merit, it also is also procedurally barred.

## CONCLUSION

¶33. Because deliberate-design and depraved-heart murder have coalesced, and this Court has interpreted Section 97-3-19(2)(a) to require only a depraved heart, the jury instruction provided was a proper statement of the law, and Fitzpatrick's argument that the State failed to show the killing was done with deliberate design is without merit. Therefore, we affirm Fitzpatrick's conviction and sentence.

¶34. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE**

14

**MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCE SHALL NOT BE REDUCED OR SUSPENDED, NOR SHALL THE APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION**.

**RANDOLPH, P.J., LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KING AND COLEMAN, JJ.**

**KITCHENS, JUSTICE, DISSENTING:**

¶35. I respectfully dissent because the jury verdict of "guilty of capital murder" was compromised. The capital murder jury instruction included both the crime of deliberate design murder, defined in Mississippi Code Section 97-3-19(1)(a) (Rev. 2006), and the crime of depraved heart murder, defined in Mississippi Code Section 97-3-19(1)(b) (Rev. 2006). This jury instruction did not foreclose some jurors' finding that Franklin Fitzpatrick committed deliberate design capital murder, while, concomitantly, allowing other jurors to find him guilty of depraved heart capital murder. The prosecution was, therefore, relieved of its burden of proving its theory of the case beyond a reasonable doubt, and it cannot be said that the verdict was unanimous, whereby all twelve jurors agreed to convict the defendant of the same crime.

¶36. The indictment charged that Fitzpatrick "did unlawfully, willfully and feloniously, without authority of law and *with the deliberate design to effect death*, kill and murder Dewayne Crenshaw, a Deputy Sheriff, while Dewayne Crenshaw was acting in his official capacity as a Deputy Sheriff . . . in violation of the provisions of [Mississippi Code] Section

15

97-3-19(2)(a) . . . ."[6] (Emphasis added.) Mississippi Code Section 97-3-19(1) defines "murder:"

> (1)  The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
>
>> (a)  When done *with deliberate design to effect the death* of the person killed, or of any human being;
>>
>> (b)  When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;

Miss. Code Ann. § 97-3-19(1)(a), (b) (Rev. 2006) (emphasis added).

¶37.  In spite of the statutory language set forth above and notwithstanding the attempted specificity with which Fitzpatrick was indicted, the jury was instructed as follows:

> THE COURT instructs you the jury that in order to find Mr. Fitzpatrick guilty of capital murder of Dewayne Crenshaw, you must find that each of the following elements of capital murder have been met:
>
>> 1.)  The deceased, Dewayne Crenshaw, was a living person; and
>>
>> 2.)  On or about December 3, 2010, in Tippah County, Mississippi, the defendant, Franklin Fitzpatrick, did willfully and feloniously, without the authority of law *with deliberate design*, kill and murder Dewayne Crenshaw *or* that the defendant, Franklin Fitzpatrick, did kill Dewayne Crenshaw *while in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although*

---

[6] I note that, although this issue was not raised by Fitzpatrick on appeal, the indictment under which Fitzpatrick was charged does not, apart from mentioning Section 97-3-19(2)(a) (Rev. 2006), correctly state the crime of which Fitzpatrick was accused. There is no mention of "peace officer" or "state . . . law enforcement officer," as Section 97-3-19(2)(a) specifies. Nor does the indictment allege that Fitzpatrick possessed "knowledge that the victim was a peace officer . . ." in accordance with Section 97-3-19(2)(a).

> *without any premeditated design to effect the death of an particular individual and*;

> 3.)   That, Dewayne Crenshaw, at the time of his murder, was a law enforcement officer in the line of duty for the Tippah County Sheriff's Department, and the defendant, Franklin Fitzpatrick, knew or should have known Dewayne Crenshaw was a law enforcement officer[7] in the line of duty,

> then you shall find the Defendant, Franklin Fitzpatrick, "guilty" as charged of capital murder.

(Emphasis added.)

¶38.   It is true, as the majority relates, that the crime of deliberate design murder has "been coalesced" with the crime of depraved heart murder, since, " as a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life." ***Hawkins v. State***, 101 So. 3d 638, 642 (Miss. 2012) (internal citations omitted); *accord **Catchings v. State***, 684 So. 2d 591, 599 (Miss. 1996)). In the case of ***Hawkins v. State***, the defendant had argued to this Court that premeditation was required for him to receive a conviction for capital murder, and we rejected his argument. ***Hawkins***, 101 So. 3d at 643. But none of the cases in which we have held that depraved heart murder is subsumed into deliberate design murder contemplated the context of Mississippi Code Section 97-3-19(2)(a), which provides:

> (2)   The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

---

[7]As stated in Footnote 1 above, the indictment is devoid of any allegation that Fitzpatrick murdered "a law enforcement officer," as required by Section 99-3-19(2)(a).

17

> (a)     Murder which is perpetrated by killing a peace officer or fireman while such officer or fireman is acting in his official capacity or by reason of an act performed in his official capacity, and with knowledge that the victim was a peace officer or fireman.

Miss. Code Ann. § 97-3-19(2)(a) (Rev. 2006).

¶39.    While the majority is correct that the statute does not require deliberate design, this Court has not considered the troublesome nature of instructing the jury on capital murder of a peace officer, with *murder* having been defined as *either* deliberate design murder or depraved heart murder. Fitzpatrick contends in his brief to this Court that the "jury in this case was allowed to convict Fitzpatrick of capital murder of a peace officer if it found that he *either* committed deliberate design murder *or* depraved heart [murder]." (Emphasis in original.)

¶40.    This Court has held that, "[i]f a jury has been instructed that it may rely on any one of two or more independent grounds, and one of those grounds is insufficient, a subsequent general verdict of guilty must be set aside because the verdict may have rested exclusively on the insufficient ground." ***Phillips v. State***, 493 So. 2d 350, 355 (Miss. 1986) (citing ***Stromberg v. California***, 283 U.S. 359, 369-70, 51 S. Ct. 532, 535-36, 75 L. Ed. 1117 (1931)) (emphasis in original). Stated differently, a "general verdict must be 'set aside in cases where the verdict is supportable on one ground, but not on another, and *it is impossible to tell which ground the jury selected*." ***Phillips***, 493 So. 2d at 355 (quoting ***Yates v. United States***, 354 U.S. 298, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957), *overruled on other grounds*

18

by **Burks v. United States**, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)) (emphasis added).

¶41.     This Court recognized in **Hawkins** that "while all depraved heart murder 'subsumes' deliberate design murder, **Catchings**, 684 So. 2d at 599 (quoting **Mallett v. State**, 606 So. 2d 1092, 1095 (Miss. 1992)), the inverse is not true." **Hawkins**, 101 So. 3d at 642. "In other words, all murders committed with 'deliberate design to effect the death of the person killed' necessarily require a 'depraved heart,' but depraved heart murder does not require premeditated design." **Id.** (quoting Miss. Code Ann. § 97-3-19(1)(a), (b) (Rev. 2014)).

¶42.     The jury's verdict in the present case was as follows: "We the jury, find the defendant, Franklin Fitzpatrick, guilty of capital murder." Consequently, "it is impossible to tell which ground the jury selected," whether it was deliberate design murder (for which Fitzpatrick had been indicted) or depraved heart murder. *See* **Phillips**, 493 So. 2d at 355. In other words, if the jury (or some of its members) found that Fitzpatrick was guilty of capital murder of a peace officer and those jurors found that depraved heart murder was the applicable definition of "murder," then Fitzpatrick could not have been found concurrently guilty of deliberate design capital murder. *See* **Hawkins**, 101 So. 3d at 642 (internal citations omitted). A finding by the jury that Fitzpatrick was guilty of depraved heart capital murder of a peace officer would have rendered the deliberate design theory of capital murder of a peace officer unsupportable. Because the record is devoid of such information,[8] the general verdict of "guilty of capital murder" cannot stand. *See* **Phillips**, 493 So. 2d at 355.

---

[8]The jury was polled, but the responses provided by the individual jurors shed no light on which theory or theories the jury selected.

¶43.   I would reverse and remand for a new trial, in which the jury instruction defining the crime of capital murder of a peace officer under Mississippi Code Section 97-3-19(2)(a) (Rev. 2006) conforms to the indictment, which alleged that Fitzpatrick murdered Deputy Crenshaw by deliberate design under Mississippi Code Section 97-3-19(1)(a) (Rev. 2006).

**DICKINSON, P.J., KING AND COLEMAN, JJ., JOIN THIS OPINION.**